416 So.2d 73 (1982)
STATE of Louisiana
v.
Morris BURTON, Jr.
No. 81-KA-2033.
Supreme Court of Louisiana.
June 21, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, *74 Dist. Atty., Warren J. Hebert, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
John P. Calmes, Jr., Baton Rouge, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant, Morris Burton, was convicted of second degree murder, a violation of R.S. 14:30.1. The trial judge ordered Burton to serve a life sentence at hard labor without benefit of parole, probation or suspension of sentence for 40 years. Defendant appeals his conviction and sentence, raising a single assignment of error. We find no merit in this sole assignment and affirm defendant's conviction and sentence.
Burton, with a nylon stocking pulled over his head, entered a Baton Rouge bread thrift shop and pulled a .32 caliber pistol on the store's proprietor and an employee. The robber pointed his weapon toward the cash register and in an unintelligible mumble appeared to demand money. The proprietor opened the cash register and reached for its contents when the holdup man shot him once in the upper chest. As the victim slumped to the floor, his assailant turned the gun on the other employee and, under the threat of death, ordered her to give him the money. The clerk hurriedly placed approximately $300 in a paper bag and handed it to the armed perpetrator, who then fled the store. Though the wounded proprietor was rushed to a nearby hospital, he died later that day from extensive internal bleeding.
Following a tip from a confidential informant, the police investigation focused on Morris Burton. After investigating the informant's allegations, Baton Rouge police apprehended defendant at his residence.
Burton gave the authorities a statement in which he admitted his participation in the armed robbery and murder at the bread thrift shop. In this recorded confession, defendant stated he was driven to the thrift shop by a friend, Melvin Bindom. While Bindom remained in the vehicle defendant, armed with a pistol, proceeded to hold up the shop and shot the proprietor.
Defendant filed a motion to suppress this statement, urging it was inadmissible as evidence against him because it was the product of an unlawful arrest. According to Burton, his arrest was illegal because the police lacked probable cause and arrested him at his residence without first obtaining an arrest warrant. The trial judge refused to suppress the confession and we denied writs on the matter, noting that defendant had an adequate remedy on appeal. 393 So.2d 749 (La.1980).
In his only assignment of error, defendant reasserts his argument concerning the trial court's failure to grant his motion to suppress the inculpatory statement given after his arrest.
A confession obtained as a direct result of an unlawful arrest should be suppressed as evidence. State v. Leatherwood, 411 So.2d 29 (La.1982); State v. Cook, 404 So.2d 1210 (La.1981). An arrest is lawful when it is based on probable cause. State v. Leatherwood, supra. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution to believe the person to be arrested has committed a crime. State v. Tokman, 412 So.2d 561 (La.1982); State v. Leatherwood, supra.
A confidential informant may provide adequate information to establish probable cause for a warrantless arrest. State v. Edwards, 406 So.2d 1331 (La.1981). However, the basis of the informant's credibility and the reliability of his information must be established. State v. Edwards, supra; State v. Cook, supra. If necessary, the reliability of both the informant and his information may be corroborated by independent *75 sources. State v. Wichers, 392 So.2d 419 (La.1981).
In the instant case, the state attempted to establish probable cause at the hearing on the motion to suppress primarily through the testimony of Officer Robert Gill. According to this witness, a confidential informant contacted the officer with information concerning the robbery-murder at the bread thrift shop. This informant provided information on previous occasions which had resulted in two convictions. Thus, the officer was justified in his belief that this confidential informant was of proven credibility. State v. Paciera, 290 So.2d 681 (La. 1974).
The confidential informant allegedly provided Officer Gill with details of the crime, identified Morris Burton as the holdup man, and stated that Melvin Bindom was in possession of the murder weapon. Though the circumstances underlying these claims were never disclosed, independent corroboration was provided after Gill and another officer picked up Bindom and questioned him about his knowledge of the offense. See State v. Wichers, supra.
Bindom allegedly admitted in a taped statement his participation in the robbery, named defendant as a co-perpetrator, and claimed that Burton had recently given him a pistol. Though Bindom, who also testified at the hearing, emphatically denied making a statement implicating anyone in the robbery-murder, he admitted that defendant had given him a gun.
Later that evening, Bindom, while accompanied by police officers, retrieved the pistol. Ballistics tests were immediately performed on the gun which conclusively established it was the murder weapon. According to Officer Gill, defendant was arrested at his residence in the early morning hours shortly after the ballistics tests were completed.
We believe the information obtained by law enforcement officers subsequent to the confidential informant's tip sufficiently corroborated his allegations. Bindom's alleged admission that he and defendant were the perpetrators and his possession of the murder weapon clearly supported the reliability of the informant's information. Under these circumstances, we conclude that a police officer of average caution would have probable cause to believe that Morris Burton had committed a crime.
Though the testimony at the hearing on the motion to suppress adequately supported the trial judge's ruling, our review of his holding is not limited to the evidence adduced at this pre-trial hearing. State v. Chopin, 372 So.2d 1222 (La.1979). Accordingly, all pertinent evidence given at trial of the case may be considered in our review of the lower court's holding.
At trial, defendant was able to create an apparent contradiction concerning two facts vital to the state's showing of probable cause. The recorded statement of Melvin Bindom, in which he allegedly acknowledged his and defendant's participation in the offense, was offered to impeach Officer Gill's testimony. Though parts of the tape were inaudible, it is clear that Bindom did not, in this particular statement, implicate Burton as the holdup man. The veracity of Officer Gill was further eroded when testimony by the ballistics expert indicated that testing of the murder weapon may have been conducted after defendant was arrested.[1] Even so, we are of the opinion that the entire record supports the conclusion that the informant's information was reliable and defendant's arrest based on probable cause.
Though Officer Gill mistakenly believed that Bindom implicated defendant as the perpetrator during his recorded statement, the officer consistently testified that Bindom had made several remarks concerning the robbery-murder which did implicate *76 Burton that were not recorded by the investigating officers.[2] Gill's contentions concerning Bindom's statement and ballistics tests were supported by the testimony of Ronald Alford, the other Baton Rouge police officer present when Melvin Bindom gave his statement. Considering the three year lapse of time between the interrogation of Bindom and the officer's testimony, it is most likely that these witnesses confused those statements which were not recorded with those statements offered as evidence at trial.
Though we find the foregoing inconsistencies in Officer Gill's testimony damaging to the state's case, we still conclude that the informant's tip, which eventually led to Burton's arrest, had been independently corroborated to a degree sufficient to give the investigating officers probable cause to arrest defendant. The police investigation centered on Melvin Bindom and defendant solely as a result of the information provided by the tipster. Bindom verified the police informant's claim that he had possession of the murder weapon and that defendant was involved in the offense when Bindom acknowledged receiving a pistol from Burton shortly after the offense. This gun, which was recovered from Bindom before defendant's arrest, was the same caliber as the pistol used to kill the thrift shop proprietor. Thus, even though the defense was able to undercut Officer Gill's recall of the facts surrounding Burton's apprehension, the subsequent investigation unquestionably solidified the reliability of the informant's allegations.
Defendant also urges that if probable cause did exist, the confession ought to be suppressed because defendant's arrest at his residence was affected without a warrant. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Though the absence of exigent circumstances gave law enforcement officers adequate time to obtain an arrest warrant, we note that defendant was apprehended several years before the Payton decision was rendered. This Court has consistently refused to apply Payton retroactively because, as we reasoned in State v. Edmond, 399 So.2d 187 (La.1981), "At the time defendant was arrested, his warrantless arrest was specifically authorized by Article 213 of the Louisiana Code of Criminal Procedure.[3] The arrest was made on probable cause and in good faith reliance on what the officers believed to be a valid statute under previously announced standards."
Because there are no compelling reasons to alter our previous holdings, we conclude that defendant's warrantless arrest was lawful, and his subsequent confession admissible as evidence. Accordingly, the conviction and sentence of Morris Burton are affirmed.
AFFIRMED.
LEMMON, J., concurs.
NOTES
[*] Judges William Norris and Fred Sexton of the Second Circuit Court of Appeal and Judge Robert Lobrano of the Fourth Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Melvin Bindom voluntarily accompanied the police officers for questioning in the early evening of November 30, 1977. The murder weapon was retrieved later that night and tests were conducted after midnight. Burton was arrested at approximately 3:00 a. m. on December 1. The ballistics expert, Ronald Jewel, stated testing was conducted on December 1, 1977. Therefore, unless the tests were performed before 3:00 a. m., they would have been conducted subsequent to defendant's arrest.
[2] At the hearing on the motion to suppress, Officer Gill stated that "we talked about the thing (robbery-murder) prior to him giving a statement. Then ... then the statement was recorded." While testifying at trial the officer stated that possibly two recorded statements had been taken from Bindom and urged that "I don't recall if I said it (Bindom's implicating defendant) was on that taped statement or not. I said he made the statement." Later, Gill added that "Melvin Bindom said a lot of things to me that's probably not on the tape."
[3] Art. 213. Arrest by officer without warrant; when lawful.

A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence, and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest.