466 So.2d 681 (1985)
STATE of Louisiana
v.
Michael C. BURKS.
Nos. 84-KA-406, 84-KA-407.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
Writ Denied May 24, 1985.
*682 Douglas A. Allen, Jr., Harahan, for defendant-appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for the State.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Defendant-appellant, Michael Burks, was charged by separate bills of information with two violations of La.R.S. 40:966, possession with intent to distribute marijuana. The cases were consolidated and the defendant filed a motion to suppress evidence in each case, which motions were denied. The accused then plead guilty as charged, but reserved his right to appeal the adverse ruling on the suppression motions under State v. Crosby, 338 So.2d 584 (La.1976). In each case, Burks was sentenced to two years in the Jefferson Parish Correctional Center; sentence was suspended and he was placed on two years active probation. Several special conditions of probation were imposed (not at issue here) and he was also fined $1,000.00 in each case (to be paid to the Indigent Defender Board). The appeal taken in each case has been consolidated for appellate review.
On the afternoon of October 21, 1983, Agent Raymond Gibbs of the Jefferson Parish Sheriff's Office was contacted by a confidential informant (C.I.) who related that he had been in the residence of Michael Burks at 501 Wake Forest Court in Kenner, and had personally observed approximately 2 pounds of marijuana in the house. The C.I. further stated that, later the same evening, Burks would be making deliveries of the marijuana in the Kenner area and supplied a physical description of the suspect. In the past, the C.I. had proven his reliability and credibility by supplying Agent Gibbs with information which had led to a number of arrests and seizures.
After receiving the information, Agent Gibbs began an investigation during which he learned that Burks had a prior narcotics arrest in Jefferson Parish and that a white Chevrolet van was registered to Burks at the Wake Forest address. Based upon the information supplied by the C.I., and his own investigation, the officer, along with another agent, placed Burks' house under surveillance. When a subject fitting appellant's description exited the house at 11 p.m., and drove away in the van registered to the defendant, the officers followed. The driver stopped, entered a convenience store, made a small purchase, and re-entered the van. From there, he proceeded on Vintage to Lord Street. Gibbs testified that during this time the driver was observed exceeding the posted speed limit of twenty (20) miles per hour. At the intersection of Loyola and St. Julia, Agent Gibbs signalled to the driver to pull over. The driver complied and exited the van. He displayed to Agent Gibbs a driver's license in the name of Michael Burks. The deputy testified that, with the aid of a flashlight, he examined the front seat of the van, from the passenger side, observed a brown paper bag, partially torn at the bottom, which revealed a glassine bag containing green vegetable material. The defendant, on the other hand, testified that the marijuana was hidden under some newspapers and a jacket behind the seat of his van. Whichever was the case, Agent Gibbs seized the bag and field-tested a small portion of the material therein, which proved positive for the presence of marijuana. Burks was then placed under arrest and advised of his Miranda rights.
After a discussion on the scene with Agent Gibbs, Burks executed a consent form permitting the narcotics agents to search his house. At the residence, agents found four and one-half pounds of marijuana in the bedroom occupied by Michael *683 Burks and ten one-ounce bags in the bedroom identified as belonging to Burks' brother, Patrick. When questioned as to the ownership of the ten one-ounce bags, Michael Burks admitted they were his, rather than his brother's.
At the suppression hearing, the State offered testimony that the stop of the van was effected because of a routine traffic violation and that the marijuana seized was in "plain view" on the front seat, as well as arguing that the deputies had probable cause to stop and search the van, based on the information supplied by the C.I. In response to a defense request for reasons for denying the motion to suppress, the trial judge stated:
I felt that the contraband material, the marijuana, that was in question was not necessarily in plain view from the evidence that I heard, but I based my decision on the denial of the motion to suppress on the information that the police officers had obtained from the confidential informant and their verification of the confidential informant who told them by their own observations. Therefore, I felt that the searchthe initial search although the marijuana, I did not feel was in plain view, the initial search was therefore valid. For that reason and also the second search was valid because of the fact that it was a consent.
In the record, defendant assigns as error "the Court's denial of the Motion to Suppress an illegal search." This assignment was expanded in appellant's brief to the following:
1. The trial court erred when it refused to suppress evidence seized in a warrantless search of defendant-appellant's vehicle when the said evidence was seized in violation of Article 1, Section 5 of the Louisiana Constitution of 1974 and Amendment 4 of the United States Constitution.
2. The trial court erred when it refused to suppress evidence seized from the home of the defendant-appellant in a warrantless search when the said search was conducted by virtue of a consent obtained from the defendant-appellant by coercion and by false assertions of authority in violation of Louisiana Constitution of 1974, Article 1, Section 4 and Amendment 4 of the United States Constitution.
It is well-settled that a warrantless search is per se unreasonable, subject to a few specifically delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Blanchard, 374 So.2d 1248 (La.1979); U.S.Const., Amend. 4; La. Const., Art. 1, Sec. 5.
Once such exception to the warrant requirement of the Fourth Amendment was enunciated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In Carroll, supra, the Supreme Court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment.
The extent of such a warrantless search was set forth recently in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). The court stated "[t]he scope of a warrantless search based on probable cause is no narrowerand no broaderthan the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize. [footnote omitted]."
The State submits that Agent Gibbs, at the time of the seizure (detention) of the van and its contents, was in possession of sufficient information to support a finding of probable cause to believe the vehicle contained contraband. If so, the warrantless search of the van and the subsequent seizure of the marijuana from within were accomplished within the permissible bounds established by the jurisprudence. See United States v. Ross, supra; United States v. Carroll, supra.
In State v. Hernandez, 408 So.2d 911 (La.1981), Rehearing Denied, the Louisiana *684 Supreme Court stated: "Based on the detailed tip of a proven reliable informant who purported to have first-hand knowledge of the revealed facts, the officers clearly had probable cause to believe that the pickup truck would contain marijuana." The facts in Hernandez are similar to the facts in the present case in that in Hernandez a deputy received a phone call from a C.I. informing him that Mr. Hernandez "was bringing some marijuana to sell to the informant that day at the [...] construction site where [... they] were both employed." Two deputies intercepted Hernandez's truck as he arrived at work and, over his protest, searched the vehicle, discovering the contraband.
Shortly after rendering their decision in Hernandez, supra, the Supreme Court, in State v. Burton, 416 So.2d 73 (La.1982), proclaimed: "A confidential informant may provide adequate information to establish probable cause for a warrantless arrest. State v. Edwards, 406 So.2d 1331 (La.1981). However, the basis of the informant's credibility and the reliability of his information must be established."
In its brief, the defense avers: "A warrantless search of an automobile may only be conducted upon probable cause provided that the said probable cause is based upon explicit information which would be sufficient to obtain a search warrant if presented to a neutral magistrate," citing State v. Ruiz, 437 So.2d 330 (La.App. 2nd Cir.1983) as authority. The facts in Ruiz are these: An Arkansas narcotics officer telephoned the Ouachita Parish Sheriff's office and informed Deputy Toney there that a certain vehicle, containing over eight pounds of marijuana, would shortly be arriving in the Monroe area. The vehicle (a license plate number and description were provided) would be west bound on Interstate 20 and would be driven by a Mexican named Jesus Ruiz. The Arkansas officer further stated that he had received his information from a confidential informant who had observed the marijuana in the van and that he (the officer) had followed the vehicle to the Arkansas-Louisiana line. Based only upon this information, Ouachita Parish deputies stopped the Ruiz vehicle and searched Jesus Ruiz and a passenger. The search, which discovered, among other things, a hunting knife, a bag of marijuana and some pills, resulted in the arrest of both men and the seizure of their vehicle. In affirming the conviction and sentences of both men, the appellate court stated: "The information obtained from Trooper Foy was explicit and the basis of knowledge was stated. While the timeliness of the information was not specifically indicated to Toney, sufficient timeliness is implicit in Foy's observation of the vehicle and its appearance in Ouachita Parish shortly thereafter. All of these factors combined furnished probable cause to stop and search this vehicle under the Carroll doctrine." Ruiz, supra, at page 336.
Certainly the information upon which the stop and search in the present case was based was no less than the probable cause upon which the stop in Ruiz was based.
We find the facts in the case before us strikingly similar to those in State v. Brooks, 452 So.2d 149 (La.1984), reversed on rehearing on the issue of deprivation of defendant's right to counsel. The following recitation of facts was taken from Brooks, supra at pg. 150:
The sequence of events leading to defendant's arrest began when De Soto Parish Sheriff's Deputy Robert Davidson received a phone call from a confidential informant, notifying him that the defendant was parked near De Soto Junior High School, selling marijuana. Officer Davidson was familiar with the informant, who had provided him with reliable information on several prior occasions. The informant stated that he personally observed a certain quantity of marijuana in the car, and fully described defendant's car and license plate number.
Upon receiving the information, Officer Davidson (who knew defendant from an earlier arrest for possession of marijuana with intent to distribute) drove to the school area in an unmarked police car. After observing defendant get into *685 a car matching the informant's description, Davidson followed defendant, placing a flashing red light on his dashboard. Thereafter, defendant pulled into a driveway and stopped. Several deputies joined Davidson, who informed defendant of the reason for the stop and asked permission to search the car. When this request was refused, the officers nevertheless searched the vehicle, and found thirteen packages of what was later determined to be marijuana. Defendant was then arrested and later charged with possession of marijuana with intent to distribute.
Commenting on the warrantless search of defendant's automobile, the Supreme Court proclaimed:
The present standard for warrantless automobile searches under the Fourth Amendment was expressed in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). There, the U.S. Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within it "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched." 102 S.Ct. at 2159. Thus, for purposes of analyzing warrantless automobile searches, the mobile/immobile distinction is no longer relevant. State v. Hernandez, 408 So.2d 911, 914 (La. 1981). Brooks, supra, at 152.
As did the court in Brooks, we find the police officers involved in the instant case were justified in believing the van to contain marijuana and thus the officers were entitled to make a warrantless arrest and accompanying search:
In the instant case, Officer Davidson had probable cause to stop defendant's vehicle. Initially, a confidential informant provided Officer Davidson with the information that defendant was parked near a school selling marijuana, particularly describing the car and its location. A confidential informant may establish probable cause for a warrantless arrest, providing his underlying credibility is established. State v. Burton, 416 So.2d 73, 74 (La.1982). This credibility is ascertained by looking to the totality of the circumstances surrounding the tip. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). [...]
Once Officer Davidson stopped defendant, he could only search defendant's car if he possessed probable cause to believe that the vehicle contained marijuana. The tip provided by a reliable informant, and corroborated by defendant's presence at the location described in the tip, could of itself have provided the necessary probable cause. Moreover, Officer Davidson was familiar with defendant's prior drug activities ... Brooks, supra at 152.
Defendant next contends that the evidence seized in a consent search of his house should also be suppressed. In his brief, defense counsel makes a two-fold argument in support of his contention. First, he argues that since his initial stop and search was unconstitutional, the consent search of his residence was also illegal under "the fruit of the poisonous tree" doctrine. Since we have already found the initial stop and search valid, this contention has no merit. Second, the defense argues that the defendant's consent was not freely and voluntarily given. This court addressed the "consent-voluntariness issue" in State v. Bearden, 449 So.2d 1109 (La. App. 5th Cir.1984) writs denied, 452 So.2d 179. At page 1117 of Bearden, this court stated:
A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge upon consideration of the facts and circumstances of each case. See State v. Edwards, 434 So.2d 395 (La.1983) and State v. Ludwig, 423 So.2d 1073 (La.1982). These factual determinations are to be given great weight upon *686 appellate review. See State v. Edwards, supra; State v. Smith, 433 So.2d 688 (La.1983); and State v. Robinson, 386 So.2d 1374 (La.1980).
Whether the defendant was under arrest at the time of the consent is a factor to be considered in determining whether the defendant voluntarily consented to the search, although the fact of custody does not, of itself, render the consent involuntary. See State v. Bourgeois, 388 So.2d 359 (La.1980).
Whether the person was advised of his right to refuse consent or was coerced into acquiescing is likewise to be considered. State v. Bourgeois, supra.
The trial judge, in ruling on the motion to suppress, stated that "the second search was valid because of the fact that it was a consent."
While the circumstances surrounding the signing of the consent form could indicate subtle coercion by the arresting agents, it is equally likely that the defendant could have concluded that it was in his best interest to cooperate. The record portrays the defendant as intelligent, streetwise, and articulate. After carefully reviewing the record, we find the defendant freely and voluntarily consented to the search of his house in order to secure certain advantages, concluding that it was in his best interest to cooperate with the law enforcement authorities.
Accordingly, for the reasons stated, we affirm the ruling of the trial judge and the conviction and sentence of the defendant, Michael C. Burks.
AFFIRMED.